GLADNEY, Judge.
The plaintiff, P. C. Lindsey, instituted this action for the value of certain service station equipment and for damages for the alleged wrongful taking and use of said property. Following a trial on the merits there was judgment in favor of plaintiff for $119 as the 'equivalent of rent during the nineteen months preceding January 6, 19SS, and also for an equal additional sum as rent thereafter until the end of thirty days after the finality of the judgment. The decree recognized plaintiff to be the owner of the equipment in question and allowed him thirty days after judgment to remove the same, after which time he is prohibited from collecting further rent. From the judgment so rendered, plaintiff has perfected a devolutive appeal. The defendant has neither appealed nor answered the appeal. ;
The facts relating to this controversy arose in the following manner: A written contract was entered into on December 30, 1952, between plaintiff, an independent oil distributor (doing business under the name of Lindsey Motor Fuel Company) and A. E. Stewart, the owner and operator of Stewart Service Station, situated near Hodge, Louisiana. In accordancé therewith Lindsey supplied and equipped the station with two Bennett electric gasoline pumps', an air compressor, and a one-thousand gallon underground tank. This equipment was to be used by Stewart for the sole purpose of storing, handling and advertising gasoline and other products supplied by Lindsey. Stewart further agreed not to encumber said equipment' or ■ to move it from the premises without permission of Lindsey, who reserved the unconditional right to remove the same at any time upon ten days notice to Stewart.
The contract stipulated no definite term and was in operation for a period of approximately nineteen months when Stewart notified Lindsey that he would henceforth purchase his gasoline and other petroleum products from Q. A. Brewton, distributor of Texaco products. Lindsey was advised-by Brewton the Texas Company would purchase the equipment installed on the Stewart premises. Negotiations were then commenced between Lindsey and The Texas Company for a sale of the eijtiipment with the exception of the air compressor which Lindsey removed from the premises shortly after Stewart, discontinued handling his products. During the period of negotiations between The Texas Company and Lindsey, the pumps were painted with The Texas Company colors, Brewton from time to time filled the underground storage tank with gasoline, and Stewart served his customers through the use of plaintiff’s pumps. The negotiations failed because The Texas Company and Lindsey were unable to agree as to the value of the property. Lindsey valued his property at $1,071, whereas The Texas Company considered it to have a value of only $450, including the air compressor listed at $50, which had been re- • moved by Lindsey.
It is disclosed by the record that because gasoline pumps are anchored in concrete and gasoline storage tanks, are buried under ground or concrete, it is a customary trade practice that when a service station account is transferred from one distributor to another, the latter will purchase, the equipment , of the first distributor on a uniform basis recognized by most of the companies dealing in such petroleum products. The recognized method of evaluing such equipment is the purchase or invoice price thereof with deduction of ten per cent for depreciation. The Texas Company contended Lindsey’s equipment was outmoded, and although it was new equipment, it was *380 several years of age at the time it was installed in the Stewart service station. But there is no need to belabor the point. The Texas Company and Lindsey did not reach an agreement as to the price of the sale, and Lindsey failed or declined to move said equipment from the Stewart premises as a result of this impasse the equipment was used for the distribution and sale of petroleum products bearing the brand name “Texaco”. Lindsey finally instituted this suit to recover the sum of $1,-071 as the value of the property alleged to have been taken and the additional sum of $1,881 as damages for loss of the use thereof, and for- mental anguish and worry allegedly caused by conversion of the property.
The action is ex delicto and brought under Article 2315 of the LSA-Revised Civil Code of Louisiana. In a case involving an alleged wrongful conversion of an automobile, it was said that in order for an act to constitute conversion and give rise to damages it is not essential that defendant should have the complete manucaption of the property, or that he apply the property to his own use, if he has exercised dominion over it in exclusion of, in defiance of, or inconsistent with the owner’s right. Edwards v. Max Thieme Chevrolet Co., La.App.1939, 191 So. 569, 571.
The only substantial question for our determination is whether or not the aforementioned use of the tanks and pumps constituted an illegal taking and wrongful use of the property of Lindsey.
Defendant stoutly contends that it is not a proper party defendant forasmuch as it assumed no responsibility for the actions of Brewton, who, it declares, was an independent operator not subject to the control of The Texas Company. We cannot entirely agree with the contention so made. The record discloses that it'was the responsibility of The Texas Company to furnish Stewart with the necessary equipment of tanks and pumps for the operation of the service station, which equipment would either be purchased from Lindsey by The Texas Company or new equipment would be furnished and installed. It is quite clear, however, that Lindsey was fully cognizant of the use being made of the equipment and permitted or acquiesced in its use during the period of negotiations between him and The Texas Company regarding the sale of the equipment. Apparently, Lindsey believed, and he so testified, that as long as he left his equipment on the premises of Stewart, the latter would be obliged to purchase his petroleum products. The contract between Lindsey and Stewart is silent as to the latter’s right to discontinue purchasing products from Lindsey, and, therefore, in the absence of definite term for performance Stewart could withdraw at his pleasure. The contract, however, provided Stewart would not remove the equipment from the premises without the authority of Lindsey.
It was the obligation of Lindsey to remove his equipment when it became apparent an agreement with The Texas Company could not be concluded. There is no evidence in the record which indicates the removal of the equipment by Lindsey was interfered with. The representatives of The Texas Company testified the defendant fully recognized the right of Lindsey to remove the property at any time and stated that immediately upon its removal the company would install its own equipment in the service station. These findings of facts which are virtually undisputed have convinced us that although plaintiff’s equipment was used for the storing and distri- . bution of defendant’s products without an express agreement permitting such use, Lindsey either acquiesced in or impliedly permitted the use of said property.
Under the circumstances related above we hold there was no wrongful conversion of Lindsey’s property, and, therefore, he is not entitled' to insist upon recovery of the value of the equipment. This finding is in accordance with that of the judge a quo, who concluded plaintiff was entitled to compensation for the use of his property, and as *381 to this, we agree. It appears from the record that the amount of “rental” imposed upon the defendant by the judgment is fair and equitable. The record is bare of proof to support appellant’s claim for damages for the loss of use of the property in question, and for alleged mental anguish and worry.
For the reasons herein given, the judgment from which appealed is affirmed at appellant’s cost.